IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAN YOON,

              Plaintiff-Appellee,

     v.

K.S. AVIATION INC., et al.,

              Defendants-Appellants.

Case No. 25-cv-04076-MMC

**ORDER AFFIRMING BANKRUPTCY COURT'S GRANT OF SUMMARY JUDGMENT AND JUDGMENT AFTER BENCH TRIAL**

Before the Court is defendants-appellants John Yoon, K.S. Aviation, Inc. ("K.S."), Xing Kong Aviation Service, LLC ("Xing Kong"), and Xin Han Aviation, LLC's ("Xin Han") appeal from the judgment entered in the above-titled action by the Bankruptcy Court on April 16, 2025. In particular, defendants-appellants appeal the Bankruptcy Court's (1) grant of summary judgment against John Yoon and K.S. and in favor of plaintiff-appellee Dan Yoon in the amount of $260,514.18, and (2) judgment against Xing Kong and Xin Han and in favor of Dan Yoon for that same amount. The matter has been fully briefed. The Court, having read and considered the parties' respective written submissions,[1] hereby rules as follows.

[1] Defendants-appellants request the Court take judicial notice of an order denying a motion to amend a judgment to add Xing Kong as a debtor in a state court lawsuit brought by a different plaintiff against K.S. (See Doc. No. 7.) The Court declines to take judicial notice, as the document is not relevant to the Court's determination of the issues discussed herein. See, e.g., Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice where documents were "not relevant to the resolution of [the] appeal"); McGhee v. Tesoro Refin. & Mktg. Co. LLC, 440 F. Supp. 3d 1062, 1066 n.1 (N.D. Cal. 2020) (declining to take judicial notice where "documents [were] not relevant to the Court's conclusions"). In particular, defendants-appellants "do[] not argue that the case has preclusive effect; instead, [they] offer[] the case to emphasize the incongruency in the Bankr[uptcy] Court's holding and conflicting judicial decisions" (see Reply Brief at 15), an offer that has no bearing on whether the Bankruptcy Court, based on the arguments and evidence presented on the record in the instant case, ruled in accordance with applicable law.

United States District Court
Northern District of California

**BACKGROUND**[2]

The instant appeal arises from a long-running dispute between two business partners, plaintiff-appellee Dan Yoon (hereinafter "Dan") and defendant-appellant John Yoon (hereinafter "John").

Dan and John jointly owned K.S., a corporation with two subsidiaries: Sierra Academy of Aeronautics ("Sierra Academy"), which operated a flight training school, and Sierra Air Center Development, LLC ("Sierra Air"), which operated a nascent EB-5 program.[3] In July 2014, Sierra Air took out two loans, namely, a $1.5 million loan from Bank of the West ("BOTW") and a $1.543 million U.S. Small Business Administration loan from the Bay Area Employment Development Company ("BAED"). (See App. 170.) Both loans were secured by a "[f]light [s]imulator" (see id. at 930), and Dan personally guaranteed the loans (see id. at 170).[4]

Shortly thereafter, Dan and John's business relationship deteriorated, and on June 29, 2015, Dan sought to terminate John's employment, resulting in litigation unrelated to the instant action. (See id. at 171). Making matters worse, in June 2016, Sierra Air defaulted on the BOTW and BAED loans secured by the flight simulator, leading BOTW to file, in July 2016 in Alameda County Superior Court, a lawsuit seeking to collect on its defaulted loan. (See id. at 171-72, 930.)

On September 2, 2016, Dan and John reached a settlement agreement (the "Agreement") resolving the above-referenced litigation between them as well as addressing Dan's personal guarantees of the now-defaulted loans, which guarantees

---

[2] The following facts, unless stated otherwise, are taken from the Appendix ("App.") filed by defendants-appellants. (See Doc. No. 14.)

[3] An EB-5 program "is a facility by which nonresident aliens can obtain Green Cards in exchange for an investment in the United States." (See App. 507.) As part of Sierra Air, Dan apparently wanted to build out "an airhub where you could ship fresh vegetables and goods … to Asia." (See id. at 349.)

[4] John, K.S., Dan' wife, Jenee, and Dan's company, Hana Japan, were co-guarantors of the BOTW loan (see App. 170), while K.S., Jenee, and Hana Japan, co-guaranteed the BAED loan. (see id. at 930).

United States District Court
Northern District of California

were causing Dan "significant financial stress." (See id. at 171, 245-52.) Specifically, as to the litigation, Dan agreed to resign from K.S., relinquish his ownership in K.S. and Sierra Academy, and return all corporate property to K.S. (see id. at 245-46); in exchange, John and K.S. surrendered their interests in Sierra Air, agreed to pay back personal loans to Dan, and arranged for K.S. to make scheduled payments to Dan based on K.S.'s meeting financial benchmarks in the future (see id.). As to the guarantees, Dan "agree[d] and recognize[d] that the simulator facility and its contents are not part of the EB-5 regional investment program" and thus "belong to [K.S.]," and, "[i]n recognition of Dan's agreement that [K.S.] owns the simulator facility and its contents[,] John and [K.S.] agree[d] to indemnify Dan should the loans for said items become delinquent and the creditors seek enforcement against Dan." (See id. at 247.)

In BOTW's lawsuit to collect on its loan secured by the flight simulator, the Alameda County Superior Court appointed a receiver to take control of the simulator "and sell it for the benefit of BOTW and to the extent funds were available, for [BAED]." (See id. at 930.) After the flight simulator was sold, an outstanding balance of $260,514.18 remained on the BAED loan. (See id.)

All the while, Dan was failing to fulfill his obligation in the Agreement to turn over his shares in K.S. to John (see id. at 496), while K.S. allegedly was failing to pay back the personal loans Dan had made to the company (see id. at 6-7). On March 2, 2017, Dan filed the instant lawsuit in Merced County Superior Court, seeking to collect on the loans he had made to K.S. in prior years (see id. at 5-47).

In August 2017, Chen Zhao ("Zhao") entered the picture. In particular, John and Zhao negotiated a stock purchase agreement whereby John agreed to sell K.S. to Zhao. (See id. at 614, 657.) Zhao then began operating K.S. and Sierra Academy under the name Xing Kong (see id. at 663, 744) and formed Xin Han to "hold[] title for the aircraft" acquired and used by Xing Kong (see id. at 632-35).

On March 4, 2020, while the instant case was proceeding in state court, Dan removed it to the Bankruptcy Court for the Northern District of California, where he and

his wife, Jeenee, had filed for Chapter 11 bankruptcy protection. (See id. at 1-3.) In the bankruptcy proceeding, BAED filed a $260,514.18 unsecured proof of claim based on Dan's guarantee of the loan. (See id. at 927-30.)

In the operative complaint, the Fourth Amended Complaint, filed after the case was removed to bankruptcy court, Dan claimed, inter alia, that John and K.S. were obligated under the Agreement to indemnify him for loans, including the BAED loan, made to purchase the flight simulator, and that Xing Kong, Xin Han, and Zhao, were liable for any judgment entered against K.S. (See id. at 141-42.)[5]

On December 23, 2022, Dan filed a motion for summary judgment against John and K.S. on his indemnification claim, on the asserted grounds that (1) there was no dispute the BAED loan was used to purchase the flight simulator and (2) his failure to turn over his K.S. shares was not a condition precedent to John and K.S.'s obligation to indemnify. (See id. at 162-164.) On March 13, 2023, the Bankruptcy Court granted the motion as to the above issues. (See id. at 204, 212-215.)

On July 8-10, 2024, the Bankruptcy Court held a three-day bench trial on Dan's remaining claims. As relevant to the instant appeal, Dan sought to hold "defendants Xing Kong, Xin Han, and [Zhao] … liable on any judgment against [K.S.] under an alter ego or successor liability theory." (See id. at 880.)

On April 16, 2025, the Bankruptcy Court entered judgment in favor of Dan against John, K.S., Xing Kong, and Xin Han in the amount of $260,514.18. (See id. at 908.) Based on its findings, set forth in a Memorandum Decision, the Bankruptcy Court held Xing Kong liable as a successor to K.S., finding "[t]he evidence at trial established conclusively that Xing Kong and [K.S.] are not separate entities and recourse to [K.S.] is unavailable." (See id. at 902-03.) The Bankruptcy Court also found Xing Kong and Xin Han liable as alter egos of K.S. (See id. at 904-05).

---

[5] In a series of earlier amended complaints, Dan added John, Xing Kong, and Zhao as defendants. (See App. 59.) Xin Han was not included as a defendant until the operative complaint, the Fourth Amended Complaint. (See id. at 130.)

4

Thereafter, John, K.S., Xing Kong, and Xin Han appealed. In particular, defendant-appellants challenge the Bankruptcy Court's (1) findings in support of summary judgment that (a) no material dispute of fact existed as to whether the BAED loan was used to purchase the flight simulator, and, consequently, that said loan was covered by John and K.S.'s agreement to indemnify Dan, and that (b) the Agreement's provision to indemnify was independent of Dan's obligation to turn over his K.S. shares; and (2) findings at trial that K.S. was unable to satisfy the above judgment against it, and, consequently, that (a) Xing Kong is liable as K.S.'s successor, and that (b) Xing Kong and Xin Han are liable as K.S.'s alter egos.[6]

## STANDARD OF REVIEW

### A. Summary Judgment

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita,

---

[6] Dan cross-appealed, challenging the Bankruptcy Court's judgment against him on other claims he had brought. On September 15, 2025, the cross appeal was dismissed by stipulated order. (See Doc. No. 11.)

United States District Court
Northern District of California

475 U.S. at 587 (internal quotation and citation omitted).

District courts "apply the … de novo standard of review … to review [a] bankruptcy court's summary judgment." See In re Raintree Healthcare Corp., 431 F.3d 685, 687 (9th Cir. 2005).

**B. Judgment After Trial**

A judgment issued after a bench trial must be based on the trial court's "findings [of fact]" and "conclusions of law." Fed. R. Civ. P. 52(a). "[F]actual findings are reviewable … for clear error," see U.S. Bank Nat. Ass's ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 583 U.S. 387, 394 (2018), and "decisions on questions of law are reviewable *de novo*," see Highmark, Inc. v. Allcare Health Mgmt. Sys. Inc., 572 U.S. 559, 563 (2014) (internal quotation and citation omitted). "[T]he standard of review for a mixed question [of law and fact] all depends … on whether answering it entails primarily legal or factual work." See U.S. Bank, 583 U.S. at 396.

Here, as noted above, defendants-appellants challenge the Bankruptcy Court's determinations as to alter ego and successor liability.

"[A]pplication of the alter ego doctrine is reviewed for clear error," see Towe Antique Ford Found. v. I.R.S., 999 F.2d 1387, 1391 (9th Cir. 1993), "[b]ecause the question … is essentially factual," see Wolfe v. United States, 798 F.2d 1241, 1243 n.2 (9th Cir. 1986). Although the parties have not cited any authority setting forth the standard of review as to successor liability, the Court finds determinations as to successor liability likewise are essentially factual, thus supporting review for clear error, and, even if not as a categorical matter, at least in the instant case, where Xing Kong's challenge is based on its assertion that the trial court erred by not properly accounting for facts in the record that, according to Xing Kong, require an outcome in their favor. (See Appellants Opening Brief at 29); U.S. Bank, 583 U.S. at 396 (holding where questions "immerse courts in case-specific factual issues," a reviewing court "should usually review a decision with deference").

// //

**DISCUSSION**

**A. Summary Judgment**

As noted, the Agreement provides that "John and [K.S.] agree[d] to indemnify Dan should the loans for [the simulator facility and its contents] become delinquent and the creditors seek enforcement against Dan." (See App. 247.) In granting summary judgment on Dan's indemnification claim, the Bankruptcy Court concluded there was no dispute of material fact that the BAED loan was used to purchase the flight simulator, and thus that the outstanding $260,514.18 on the note was subject to indemnification by John and K.S. (see id. at 215), a conclusion John and K.S. now challenge on appeal.

At summary judgment, Dan submitted a declaration, based on personal knowledge as owner of K.S. and Sierra Air, in which he stated the BAED loan was used "for the purchase of the [flight] simulator." (See id. at 170.) John and K.S. did not submit any declaration or other evidence to the contrary.

John and K.S. now argue the Bankruptcy Court should have disregarded Dan's declaration because the Bankruptcy Court found Dan's testimony at trial on another issue to be "evasive and self-serving." (See Appellants Opening Brief at 15 (quoting App. 890).) Their argument is not persuasive. On appeal, a reviewing court considers only the record before the trial judge at the time summary judgment was granted. See In re Yepremian, 116 F.3d 1295, 1297 (9th Cir. 1997) (finding reviewing court "cannot consider" deposition "taken after the bankruptcy court granted summary judgment"; holding such evidence is "not part of the record on appeal and [the Court] cannot consider" it); see also Henry v. Adventist Health Castle Med. Ctr., 970 F.3d 1126, 1128 n.1 (9th Cir. 2020) (holding "[i]n reviewing orders granting summary judgment, [the Court] limit[s] [its] review to the facts before the [trial] court at the time it made its ruling").

To the extent John and K.S. contend Dan's "self-serving" declaration "should have been disregarded" as insufficient to support summary judgment because the Bankruptcy Court "fail[ed] to properly contend with the issue of Dan's credibility" at the time the Bankruptcy Court granted summary judgment (see Reply Brief at 6), the Court disagrees.

United States District Court
Northern District of California

Credibility determinations are inappropriate at summary judgment. Even if Dan's declaration is characterized as "self-serving" (see id.), a trial court "may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." See Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 (9th Cir. 2015).

Next, John and K.S. argue, even if the Bankruptcy Court did not err in finding the BAED loan was used to purchase the simulator the Bankruptcy Court erred in finding Dan's failure to timely turn over his K.S. stock to them did not relieve them of their obligation to indemnify Dan under the Agreement because, John and K.S. argue, Dan's obligation to tender his K.S. shares was an "implied concurrent condition" of the Agreement. (See Appellants Opening Brief at 19.)

In opposition to summary judgment, however, John and K.S. did not raise any argument based on an interpretation of the terms of the Agreement, let alone an argument based on an implied concurrent condition. Although the Bankruptcy Court considered Dan's argument that his obligation to turn over his shares did not constitute a "condition precedent" to John and K.S.'s obligation to indemnify (see App. 164) and concluded "the indemnification provision is wholly independent of [Dan's] obligation to turn over the shares" (see id. at 214), no party raised, and the Bankruptcy Court did not address, whether Dan's obligation to turn over the shares constituted an implied concurrent condition, or for that matter, any implied condition.[7]

"The usual rule is that arguments raised for the first time on appeal … are deemed forfeited." See Orr v. Plumb, 884 F.3d 923, 932 (9th Cir. 2018). Although a "narrow exception[]" provides that a reviewing court may, at its discretion, consider an argument not raised below that is "based entirely in law," and which "will not prejudice the party against whom it is raised," the reviewing court must "still decide whether the particular circumstances of the case overcome [the] presumption against hearing new arguments."

---

[7] John and K.S. "do[] not argue" Dan's "obligation is … a condition *precedent*." (See Reply Brief at 9 n.2 (emphasis in original).)

See Dream Palace v. County of Maricopa, 384 F.3d 990, 1005 (9th Cir. 2004) (exercising discretion to consider argument raised for first time on appeal where law markedly changed after proceedings in trial court were complete). Here, John and K.S. have not identified a reason for the Court to deviate from the general rule. Under such circumstances, the Court finds John and K.S.'s new argument is forfeited. See, e.g., Schoenmann v. Schoenmann, 2024 WL 4227587, at *9 (N.D. Cal. Sept. 17, 2024) (declining to exercise discretion to address new argument on appeal where appellant did not identify relevant exception).

Accordingly, the Bankruptcy Court did not err in granting summary judgment in favor of Dan and against John and K.S.

**B. Judgment After Trial**

**1. Alter Ego Liability**

Xing Kong and Xin Han argue the Bankruptcy Court erred by "imputing K.S.'s liability … under the … alter ego doctrine" to them. (See Appellants Opening Brief at 28.)

The alter ego doctrine extends liability to another corporation where the alleged corporate wrongdoer "is so organized and controlled, and its affairs are so conducted, as to make it merely an *instrumentality, agency, conduit, or adjunct*" of said other corporation. See Las Palmas Assocs. v. Las Palmas Ctr. Assocs., 235 Cal. App. 3d. 1220, 1249 (Cal. Ct. App. 1991) (emphasis in original) (internal quotation and citation omitted). "[T]here must be," however, "an inequitable result if the acts in question are treated as those of [such alleged corporate wrongdoer] alone." See Sonora Diamond Corp. v. Superior Ct., 83 Cal. App. 4th 523, 538 (2000).

Here, Xing Kong and Xin Han challenge the Bankruptcy Court's attribution of alter ego liability, raising, as a single ground on appeal, an argument that there "is no injustice here" because K.S "continued to retain four aircraft[] within its ownership," which, according to Xing Kong and Xin Han, "is more than enough to satisfy the Bankr[uptcy] Court's judgment." (See Appellants Opening Brief at 29.)

After hearing the evidence, the Bankruptcy Court concluded otherwise, finding "it

9

would be inequitable not to impose alter ego liability" on Xing Kong in light of "the transfer of most of [K.S.'s] assets and business operations to Xing Kong," leaving K.S., in essence, "a defunct entity, owning only four planes – which are … used by Xing Kong and Sierra Academy." (See App. 905.)[8]

Xing Kong and Xin Han's assertion that the four planes to which K.S. retain title are sufficient to satisfy the judgment is devoid of support in the record. Xing Kong and Xin Han do not point to any evidence establishing the value of the four planes, either individually or collectively, let alone a value sufficient to satisfy the judgment.

Given such record, this Court cannot find the Bankruptcy Court's determination that it would be inequitable not to impose alter ego liability is clearly erroneous. See Gov't of Guam,11 F.4th 1052,1055 (9th Cir. 2021) (defining "clearly erroneous" as "illogical, implausible, or without support in inferences that may be drawn from the facts in the record" (internal quotation and citation omitted)).

Accordingly, the Bankruptcy Court did not err in granting judgment in favor of Dan and against Xing Kong and Xin Han as alter egos of K.S.

### 2. Successor Liability

Xing Kong contends the Bankruptcy Court erred by "imputing … successor liability" to Xing Kong as K.S.'s successor. (See Appellants Opening Brief at 28.)

"[W]here one corporation sells or transfers all of its assets to another corporation, the latter" can be held liable for the debts and liabilities of the former when, inter alia, "the purchasing corporation is merely a continuation of the selling corporation." See Franklin v. USX Corp., 87 Cal. App. 4th 615, 621 (2001) (internal quotation and citation omitted). Even where such circumstance is shown, however, "liability is not imposed on the acquiring corporation when recourse to the debtor corporation is available." See Beatrice Co. v. State Bd. of Equalization, 6 Cal. 4th 767, 778 (1993).

---

[8] The Bankruptcy Court further concluded that "Xin Han, for all material intents and purposes, is Xing Kong," a finding not challenged on appeal, and, consequently, that "it would be inequitable not to impose alter ego liability [on] Xin Han." (See App. 905.)

United States District Court
Northern District of California

Here, Xing Kong argues, again, that K.S. "continued to retain four aircraft[] within its ownership," which, according to Xing Kong, "is more than enough to satisfy the Bankr[uptcy] Court's judgment against [K.S.]" (See Appellants Opening Brief at 29.) After hearing the evidence, the Bankruptcy Court concluded otherwise, finding "recourse to [K.S.] is unavailable," a determination it made based on undisputed testimony demonstrating that "Xing Kong acquired virtually all of [K.S.'s] assets either directly or indirectly," that it "hire[d] [K.S.'s] employees," that it "pa[id] [K.S.'s] operating and non-operating liabilities," and that it "infused millions of dollars to operate Sierra Academy." (See App. 903.) Although the Bankruptcy Court found title to the four planes "remain[ed]" with K.S., it further found those planes "appear to be used by Xing Kong in its operation of Sierra Academy." (See id.)

In sum, based on the record before it, the Bankruptcy Court concluded K.S. "has few assets, has no current operations or ability to operate and is simply a shell of a corporation." (See id.) In challenging that conclusion, Xing Kong, as noted, does not point to any evidence in the trial record ascribing a value to the planes, let alone a value sufficient to satisfy the judgment.

Giving such record, this Court cannot find the Bankruptcy Court's determination as to the unavailability of recourse is clearly erroneous.

Accordingly, the Bankruptcy Court did not err in granting judgment in favor of Dan and against Xing Kong as a successor to K.S.

**CONCLUSION**

For the reasons stated above, the Bankruptcy Court's entry of summary judgment and judgment are hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: June 9, 2026

MAXINE M. CHESNEY
United States District Judge